## Case No. 11,674.

### In ıe REIMAN et al.

[7 Ben. 505.] [1]

District Court, S. D. New York. Dec., 1874.[2]

BANKRUPTCY—OPPOSITION TO COMPOSITION.

Creditors opposed the confirmation by the court of a proposed composition which had been accepted at the meeting of creditors duly called, because of real estate said to belong to the bankrupt R., in New Orleans and Mississippi, which was not reckoned in the assets, and would be enough, if reckoned, to warrant the payment of a larger percentage upon composition: *Held,* that, as it was doubtful whether the bankrupt had any interest in the real estate, which could be reached by an assignee in bankruptcy, and as it was clear that it could only be reached by long and expensive litigation, and as the creditors, with full knowledge of the facts, voted with great unanimity to accept the composition offered, no sufficient reason was shown why the court should refuse to confirm it.

[This judgment was affirmed by the circuit court, where it was carried by a petition of review. Case No. 11,675.]

## Case No. 11,675.

### In re REIMAN et al.

[12 Blatchf. 562; [1] 13 N. B. R. 128.]

Circuit Court, S. D. New York. June 25, 1875.[2]

BANKRUPTCY—COMPOSITION — EXEMPTIONS— OMITTED PROPERTY.

1. The provisions for a composition with creditors, contained in the 17th section of the bankruptcy act of June 22, 1874 (18 Stat. 182), are constitutional and valid, and within the power conferred on congress, by the constitution of the United States, to establish "uniform laws on the subject of bankruptcies throughout the United States."

[Cited in Re Chamberlin, Case No. 2,580; Re Jackson, Id. 7,124; Re Greenebaum, Id. 5,769.]

2. Such power carries with it the power of defining what and how much of the debtor's property shall be exempt from the claim of his creditors.

3. A composition which provides that the debtor shall pay 30 cents for every dollar of his debts, in 3 installments, the first in cash, and the others in 4 and 8 months, secured by notes endorsed by persons named, is a compliance with the requirement of the statute, that the composition shall provide for a pro rata payment or satisfaction in money, to the creditors.

[Cited in Re Hurst, Case No. 6,925. Quoted in Re Weber Furniture Co., Id. 17,331. Cited in Ransom v. Geer, 12 Fed. 608.]

[Cited in Harrison v. Gamble, 69 Mich. 107, 36 N. W. 687; Pubke v. Churchill (Mo. Sup.) 3 S. W. 831; National Mt. Wollaston Bank v. Porter, 122 Mass. 309; Robinson v. Clement, 73 Ind. 34.]

4. Certain property, alleged to belong to the debtor, was omitted by him from the statement of debts and assets produced by him to the meeting of creditors. But there was no fraud, no concealment, no want of knowledge on the part of the creditors, and the property was not of such value as would reasonably have required an alteration of the terms of the composition. The debtor was examined at the meeting of creditors, and stated all the facts in regard to the property. Under the advice of counsel, he believed his claim to it to be baseless. It appeared, that, if he had any interest in the property, such interest could be recovered only after a severe, protracted and expensive litigation: *Held,* that the failure to mention the property in the statement of assets did not invalidate the composition.

5. Semble, that the testimony of the debtor, under oath, taken down by the presiding officer, at the meeting of the creditors, constitutes a part of the debtor's statement.

[In review of the action of the district court of the United States for the Southern district of New York.]

This was a petition of review, seeking to

---

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed in Case No. 11,675.]

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[2] [Affirming Case No. 11,674.]

set aside an order of the district court, confirming a composition claimed to have been made by the debtors with their creditors, in the manner directed by the bankruptcy act [of 1867 (14 Stat. 517)]. On the 3d of August, 1874, a petition in bankruptcy was filed against the firm of M. Reiman & Co., composed of Morris Reiman and Albert Friedlander. An order to show cause why they should not be adjudged bankrupts was thereupon issued, returnable August 25th, 1874. But, prior to the return day of such order, a petition was filed by the debtors, praying that a meeting of their creditors might be called, to pass upon a proposition of composition, to be submitted in conformity with the provisions of section 17 of the amendatory bankruptcy act of June 22d, 1874. [Case No. 11,673.] After meetings of creditors duly held at various dates, resolutions of composition were confirmed by the district court, on the 19th of December, 1874. [Id. 11,674.] Of this decree of confirmation A. T. Stewart & Co., creditors of Reiman & Co., sought a review in this court. The terms of the composition were as follows: "The said debtors propose to the creditors to pay thirty cents for every dollar in which the said debtors are indebted to said creditors, respectively, payable in three installments, the first in cash, and the last two to be payable, one in four months, and one in eight months from the 1st day of September, 1874, and to be secured by notes of the said debtors, satisfactorily indorsed, dated September 1st, 1874, in full satisfaction and discharge of the several debts due and owing by said debtors to said creditors. The said notes to be indorsed by either Michael L. Doyle, of No. 267 Grand street, in the city of New York, or by Philip Gomprecht, of 944 Third avenue, or, in lieu of the said notes, the amount of the said compromise to be paid in cash, with a rebate of seven per cent. interest; and that such thirty per cent., to be paid or received, as aforesaid, be on each dollar of the indebtedness of the said debtors to said creditors, and be in full satisfaction and discharge of the several debts owing by said debtors to said creditors. The said ten per cent. in cash to be paid, and the said notes to be delivered, within ten days after the said resolution has been recorded, and the said statement of the assets and debts has been filed." The objections raised by A. T. Stewart & Co. to the composition were: 1st. That section 17 of the amendments to the bankruptcy act, approved June 22, 1874, relating to compositions, is unconstitutional. 2d. That the composition accepted is not in conformity with the section regulating compositions, in that it provides for a payment to creditors partly in notes. A. T. Stewart & Co. further sought to review the proceedings, for the reason that there had been omitted from the statement of assets filed as a basis for the proposed composition, certain

real estate claimed by the appellants to belong to Morris Reiman, in the city of New Orleans, Louisiana, valued at about sixty-five thousand dollars. This real estate was purchased in 1866, in the name of the wife of Morris Reiman, one of the alleged bankrupts, with moneys designated, under the laws of Louisiana, as "community funds." In 1868, Morris Reiman attempted to convey and settle this property upon his wife, in consideration of his love and affection for her. There was also some property standing in the name of Morris Reiman, at Yazoo City, Mississippi, which he omitted to enumerate in his schedules. It was claimed that these omissions were fatal to the confirmation of the resolutions of compromise.

Julien T. Davies, for appellants.
Samuel Boardman, for debtors.

HUNT, Circuit Justice. It is contended by the appellants, that section 17 of the bankrupt act of June 22, 1874 (18 Stat. 182), is unconstitutional. The contention is, that the constitution of the United States permits only the passage of a bankrupt act which shall require the surrender of the entire assets of a bankrupt, as a condition of his discharge from his debts. The section under consideration, it is contended, authorizes his discharge upon the surrender of a portion of his assets only.

Power is given to congress to establish "uniform laws on the subject of bankruptcies throughout the United States." The subject of bankruptcies is here committed in full to congress, with the single condition, that the laws in relation thereto shall be uniform throughout the United States. Whatever relates to the failure of traders to pay their debts, to the commission of certain acts, or the existence of certain defaults, which shall be evidence of their inability to pay their debts, to the surrender of their property, and to their discharge from their debts, may well be said to be within the subject of bankruptcies. The argument, that the subject of bankruptcies is to be interpreted and limited by the British and colonial statutes, as they existed at the time of the separation of this country from Great Britain, is quite too narrow. No country can afford to be thus cut off from all possible improvement in its legislation. Whatever relates to the subject of bankruptcy is within the jurisdiction of congress; and, to say that the law as existing at the time of the Revolution, or the adoption of the constitution, shall furnish the rule and limitation of legislation, would take a large part of the subject out of their jurisdiction. While it is true that all proper bankrupt laws and insolvent laws are based upon the theory of a surrender of the bankrupt's property, none of them require such surrender to be entire and absolute. The rigid principle of right, in these and the similar case of property subject to execution, is modified by a

principle of humanity. All civilized nations require that a debtor shall apply his property to the payment of his debts, but few, if any, of them strip him entirely. If he is married, or has a family dependent upon him for support, certain kinds or amounts of his property are exempt from such application. He is allowed by law to retain them for his own benefit and that of his family. Unless carried to an extent which indicates a fraudulent collusion between the legislator and the debtor, this exemption meets with the approval of all good men. What shall be the nature and the extent of such exemption must necessarily be within the discretion of the law-making power. If moderate and reasonable in its character and degree, it does not conflict with the principle, that the debtor's property must be applied to the payment of his debts. The intrusting of the "subject" of bankruptcies to congress carries with it the power of defining what, and how much, of the debtor's property shall be exempt from the claim of his creditors.

It is difficult to see, also, how the power to make a compromise of debts necessarily allows to the debtor the possession of any of his property. He presents a list of the names and amounts of his creditors, and of his assets. His creditors consider the subject thus presented, and are authorized to examine the debtor under oath, to obtain better or more precise information. The whole matter being thus before them, they resolve that their interests require that a compromise shall be made, and that, if the debtor will pay them a certain percentage of their debts, they will accept it in satisfaction, and he shall be discharged. They deliberately resolve, upon an understanding of all the facts, that this is all that his property can be made to pay. Are they not as capable as a court of law of judging on that subject? Some one must decide the question of the amount of the dividend, and of discharge. Some one must say that the debt of an opposing creditor shall be discharged without payment in full; and the fact, that the body of the creditors determine the point, is no more oppressive to the opposing creditor than if the determination had been made by the court.

It is objected, secondly, that the compromise before us cannot be sustained, for the reason that it does not provide for payment of the amount agreed to be paid in money. Among other provisions of the section we are considering is the following: "Every such composition shall, subject to priorities declared in said act, provide for a pro rata payment or satisfaction, in money, to the creditors of such debtor, in proportion to the amount of their unsecured debts," etc. The appellants contend, that the compromise agreement, that the debtors shall "pay thirty cents for every dollar in which the said debtors are indebted to said creditors, respectively, payable in three installments, the first in cash," the others in four and eight months,

secured by notes indorsed by persons named, is not in compliance with this requisition. Their argument is, that "money" means money in hand, cash at the time of making the agreement.

The answers to this objection are, 1st, that the statute does not intend to require a payment in cash, but simply that the amount shall be made payable in money and not in property, the assets of the debtor. There shall be no traffic or dicker or speculation in property, by which a large nominal debt may be paid by small actual value, or by which one creditor may receive more than another. The amount or proportion to be paid shall be fixed in currency, and all shall receive alike. In the present case, thirty per cent. is the amount agreed to be paid. It is agreed to be paid in money, and nothing else. The giving of security that the amount shall be paid does not alter the position. The agreement is to "pay" thirty cents for every dollar of the debts. The notes do not alter' the character of the payment. They simply make it more certain. It is the same as if the amount had been expressed to be payable in money, ten per cent. at the moment of making the agreement, ten per cent. in four months, and ten per cent. in eight months. 2d. Until the whole amount of the notes is actually paid, the debtor is not entitled to his discharge. The delivery of the notes does not of itself cancel the debt. No cases on this point under our statute are cited, but the English authorities are clear to the point. In re Hatton. 7 Ch. App. 723; Edwards v. Coombe. L. R. 7 C. P. 519.

The counsel for the appellants objects, thirdly, that the composition is void, and should be set aside on this appeal, for the reason, that certain property in Mississippi, valued by the appellants at three thousand dollars, and certain property in New Orleans, valued by them at sixty-five thousand dollars, are not described in the statement of assets and debts filed as a basis of compromise. The provision of the statute on this subject is as follows: "The debtor, or some one in his behalf, shall produce to the meeting a statement showing the whole of his assets and debts and the names and addresses of the creditors to whom such debts respectively are due." A recital in the petition for review states, "that the amended statement of the assets and debts of the alleged bankrupts, produced by them to their creditors August 26, 1874, was ordered to be filed with the clerk of said district court." The order of December 19, 1874, recites, that the bankrupts were present at the meeting of the creditors, "and answered all inquiries made of them, and produced to said meeting a statement, verified by oath, showing the whole of the assets and debts of the said bankrupts." The record also shows, that, at the meeting of the creditors, Mr. Campbell, of counsel for the opposing creditors, examined the debtor Reiman at length about the

New Orleans property and the Mississippi property, showing the value and condition of the same, and the interest, if any, the debtor had therein. Witnesses were called to establish the law of Louisiana on the point of the debtor's interest in the New Orleans property, Mr. Hennen giving evidence tending to establish that he had a valuable interest, and Mr. Fellowes giving evidence tending to show that he had none. It is assumed, by the respective counsel, that the "statement of assets and debts" presented by the bankrupt made no mention of these pieces of property or either of them. Under these circumstances, the counsel for the appellants contends, that the failure to include these pieces of property in the formal statement avoided the composition, and the same should now be set aside.

1. Does a failure to include an asset in such statement, when there is no fraud, no want of knowledge on the part of the creditors, and the same is not of such value as would reasonably have required an alteration of the terms of the composition, render void the composition? The statute contains no statement to that effect. There was, evidently, no fraud in the case, and no concealment. The debtor stated fully all the facts, and they were perfectly understood by the creditors opposing, as well as by those assenting to, the composition. There is no reason to suppose, that if the facts, as the debtor stated them, had been set forth in the statement, it would have altered the judgment of the creditors as to the wisdom of the compromise. The Mississippi estate was owned by the debtor and his wife in community, under the laws of Louisiana. He had already received from the estate a much larger value than was left, and, in equity, and as against his wife, had no interest therein. The New Orleans property had been conveyed by him, many years before, to his wife, under the advice of counsel, had been held from that time under claim of that conveyance, the law in relation to it was differently stated by different counsel, and a severe, protracted, and expensive litigation was a certain preliminary to the recovery of any interest therein. In fact, the creditors understood and weighed the matter, holding that it was not worth the contest. This I assume from the fact already stated, that the debtor, in his testimony, developed the whole matter, and that, with the knowledge of it, the creditors recommended the composition.

The statute of the state of New York authorizes the discharge of an insolvent debtor from his debts, upon the petition of himself and his creditors, "upon the provisions of this article being complied with." 3 Rev. St. (5th Ed.) 91, 93. The insolvent is to present a petition, signed by himself and two-thirds of his creditors. He is required to annex to his petition a schedule containing a full and true account of all his creditors, and the sum owing to each, etc. Many cases have arisen,

where the discharge granted under this statute was attacked, because certain debtors, whose names and the amount of whose debts, there specified, were not set forth in the schedule annexed to the petition. The holding has been uniform, in the courts of New York, that such omission did not invalidate the discharge, unless the omission was intentional, and, therefore, fraudulent, or unless such debts so increased the sum total as to show that two-thirds in amount had not petitioned, and, hence, that there was a want of jurisdiction. Taylor v. Williams, 20 Johns. 21; In re Hurst, 7 Wend. 239; Ayres v. Scribner, 17 Wend. 407; Soule v. Chase, 1 Abb. Prac. (N. S.) 48; Stanton v. Ellis, 2 Kern. [12 N. Y.] 575.

The principle is the same here. The debtor is required to present a statement of the whole of his assets and his debts. There is no specification in the statute, that the composition depends, for its validity, upon the presentation of such a statement, or that its accuracy is a condition of his discharge. A subsequent portion of the section contemplates that a statement may be inaccurate, through inadvertence or mistake. It says: "Any mistake made inadvertently, by a debtor, in the statement of his debts, may be corrected upon reasonable notice, and with the consent of a general meeting of his creditors." The creditors act upon their own judgment, having before them a statement of debts and assets, and having the debtor present to "answer any inquiries made of him." If there is no fraud and no ignorance of facts by the creditors, I hold the composition to be valid, although there be, in the "statement," a defect as to debts or assets.

2. If necessary, I should hold that the testimony of the debtor, under oath, taken down by the clerk, at the meeting of the creditors, constituted a part of his statement. The statute specifies no form, manner, or time at which this statement shall be made or presented. It is provided only, that he shall be present at the meeting, to answer inquiries, and that he, or some one in his behalf, shall produce to the meeting a statement showing the whole of his assets and debts. If no previous statement had been prepared, but, upon attending the meeting, the debtor had been sworn by the clerk, and given testimony as to the whole of his debts and assets, which was written down by the clerk, and received and acted upon by the meeting of creditors, I should hold it to be a sufficient and valid statement, within the statute. Such statement gives to the creditors knowledge, for the purpose before them, and it is always open to examination, both for information and for punishment, if untrue, by being filed with the clerk. The creditors acted upon it. In his opinion, the district judge discusses it, and bases his approval upon it. The whole effect intended by the statute is produced, and as satisfactorily as if the information had been embraced in the formal statement.

3. The omission was of a claim to property which the debtor honestly and intelligently, and under the advice of counsel, supposed was baseless. Some other person supposes he was in error. Is he to act upon his own judgment, and that of his counsel, or is he to consult upon the subject with every man that he meets? Assuming, as I do, perfect good faith and reasonable intelligence, I hold that a statement made under these circumstances was not invalid because it omitted a reference to the New Orleans and Mississippi property.

Upon the whole case, I am of the opinion, that the decree confirming the composition was right, and that the review asked for should be denied.